UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

JAMES A. SCHULTZ

      Plaintiff,

-vs-                                                                                    Case No:   22-cv-375

EDGERTON HOSPITAL and
HEALTH SERVICES, INC.

      Defendant.

**COMPLAINT**

NOW COMES the plaintiff, James A. Schultz, by his attorneys, FOX & FOX, S.C. and as and for a complaint against the defendant, Edgerton Hospital and Health Services, Inc., states as follows:

### I. NATURE OF THE CASE

1. This is a civil action alleging deprivation of plaintiff's rights under the Federal Age Discrimination in Employment Act, 29 U.S.C. § 621 et. seq. (or "ADEA"). Specifically, plaintiff claims that defendant willfully and knowingly terminated his employment because of his age causing a substantial loss of wages and other damages.

## II.     ADMINISTRATIVE PREREQUISITES

2. Plaintiff has complied with all administrative prerequisites for suit under the ADEA. He filed a timely charge of age discrimination with the Wisconsin Equal Rights Division on November 30, 2020, which was cross-filed with the Equal Employment Opportunities Commission (or "EEOC") and on June 10, 2022, the EEOC issued plaintiff a Notice of Right to Sue.

## III.    JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4).

4. The Western District of Wisconsin is the proper venue for this action pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events and omissions giving rise to plaintiff's claims occurred in this district.

## IV.    PARTIES

5. The plaintiff James A. Schultz (or "Schultz") is an adult resident of the State of Wisconsin currently residing at 7 Broadway Street, Edgerton, WI 53534.

6. The defendant Edgerton Hospital and Health Services, Inc. (or "EHHS") is a corporation licensed to do business in the State of Wisconsin whose address is 11101 North Sherman Road, Edgerton, WI 53534. Defendant is an employer within the meaning of the ADEA, 29 U.S.C. § 630(b).

## V.     FACTUAL ALLEGATIONS

7. James A. Schultz served as CEO for Edgerton Hospital and Health Services from July 2014 through October 12, 2020, when he was summarily discharged because of his age. At the time of his discharge Schultz was seventy-five years old.

8. As CEO for Edgerton Hospital and Health Services Schultz was responsible for the management and oversight of all strategic operational and clinical initiatives.

9. As CEO Schultz exceeded all expectations of his position. He eliminated up to 2MM in debt while keeping expenses under budget by up to $500,000 a year for the past five years and he completed implementation of the annual goals of the strategic plan.

10. In reviewing the strategic plan and accomplishments of EHHS for 2019 and 2020, the hospital, led by Schultz, made significant progress in implementing outpatient specialty clinics, hiring specialists, and improving the hospital's bottom line.

11. Prior to his appointment as CEO Schultz also served as a member of the Hospital Board of Trustees for ten years, including serving as board chair for five years. As a board member Schultz was instrumental in the hospital achieving key goals including a new partnership with Sisters of St. Mary's Health Care of Wisconsin and the opening of the new green-built hospital.

12.   In January 2020 Cynthia Swanson was appointed to the position of board chair and, thereafter she used her position to engineer Schultz's termination as CEO.

13.   Swanson thought Schultz was too old for the position of CEO of Edgerton Hospital and on or around February 3, 2020, she told him, "You're seventy-five years old and should consider retiring."

14.   Swanson then designed an anonymous "360 Survey" that she used to terminate Schultz's employment as CEO. She personally wrote the questions, distributed the survey, and tallied the results.

15.   The "360 Survey" conducted by Swanson did not follow hospital protocol or policy. It was a substantial departure from the way surveys were done in past, which were done by an outside professional, or using Survey Monkey, a 360-survey program the hospital had purchased a couple years earlier.

16.   Swanson selected which groups would complete the survey and which would be excluded. She included five mid-level managers, who had been disciplined, or whose job performance had been questioned by Schultz in the last two years, and she excluded all the physicians, who were Schultz's direct reports and whom she knew would be favorable to Schultz.

17.   Dr. Sankineni, who was Chief of the Medical Staff and a board member, asked Swanson at a board meeting in or around August/September

2020 why the physician staff was excluded from her "360 Survey", but he did not receive an answer.

18. Dr. Sankineni then sent out a 360 Survey Monkey to the medical staff so they could provide their assessment of Schultz's job performance as CEO.

19. The Survey Monkey asked the physicians to evaluate Schultz in the following nine areas: "Takes initiative to help resolve problems", "Creates a patient focused environment for facility", "Is a problem solver", "Is open to considering change and innovation", "Is open and receptive to feedback", "Gives constructive and helpful feedback", "Responds constructively to the mistakes of others", "Demonstrates respect, empathy, and compassion when dealing with others", and "Contributes to organizational profitability by maximizing revenue and minimizing costs."

20. Of the 6 physicians who responded to the survey the majority, at least 4 out of 6, indicated they were "very satisfied" in all nine areas, while 1 or 2 indicated they were "satisfied" or "neither satisfied nor dissatisfied." None of the physicians indicated they were "dissatisfied" or "very dissatisfied" in any of the nine areas.

21. Of the 6 physicians 4 provided the following comments about Schultz:

- "Great CEO. He always puts hospitals interests first. He has great vision for EHHS. He brought several specialists and added several new services to the hospital. He is very easy to approach and always available. He is always just one call away, very quick response time. He is very friendly. I like his open door policy. He is

5

- one of the only few CEO's that I know of rounds daily and always [there] if we need any help or we have concerns."

- "I have only very positive things to say about Jim. I have been extremely impressed with Jim as a leader and as a person. Edgerton Hospital and the local community as a whole have greatly benefited from his leadership during the difficult times of late for small community hospitals."

- "Excellent CEO and human being! It's a pleasure working with him."

- "Jim is a Problem Solver. Team player. Selfless. Dedicated."

22. Swanson excluded the physicians from her "360 Survey" solely to skew the results of the survey in a manner unfavorable to Schultz. Swanson also sought to skew the results of her "360 Survey" against Schultz by including five mid-level managers in her survey, who had reason to be biased against Schultz.

23. Schultz asked Swanson several times if he could address the results of the "360 Survey" with the full Board at one its closed sessions, but each time he was instructed *not* to attend.

24. Schultz made a specific request of Swanson to meet with the full Board on September 28, 2020, at a scheduled closed session board meeting, but he received an email from Swanson just prior to the meeting stating he was to be recused from the closed session.

25. Schultz was never provided an opportunity to address any alleged performance or conduct issues that supposedly led to his termination in a closed meeting with the board as were similarly situated younger employees.

26. The EHHS employee handbook states, "it is the philosophy of the hospital to take corrective action when needed for the purpose of correcting areas of performance deficiency or to deal with violations of policies and work rules." Employee Handbook, p. 20. However, the board never took any corrective action regarding any of Schultz's alleged deficiencies.

27. The EHHS employee handbook also states, "it is the philosophy and general practice of EHHS to provide employees, who have completed the initial introductory period of employment, with an opportunity to correct performance and conduct problems before discharge is implemented." Id.

28. However, the board never provided Schulz with any opportunity to correct any alleged performance or conduct problems before the board terminated his employment.

29. The EHHS employee handbook also states that, "The decision to discharge employees is based not only on the seriousness of the current performance infraction, but also on the individual's overall performance and length of service with the board."

30. Schultz's overall performance record at Edgerton Hospital was excellent and admittedly something "he should be proud of." However, the board never considered Schultz's overall performance record or length of service prior to terminating his employment. This was in stark contrast to the way the board treated similarly situated younger employees.

31.     No board member ever told Schultz that corrective action was necessary and/or ever provided Schultz with an opportunity to correct his alleged job performance deficiencies before implementing his discharge. Instead, the board went straight to discharge in complete disregard of its own policies.

32.     On October 12, 2020, Cindi Swanson informed Schultz that the board had voted to end his employment, citing an alleged "loss of confidence" in his leadership as CEO. No other reason was stated. This was a pretext for age discrimination.

33.     Following Schultz's summary dismissal as CEO on October 12, 2020, he was temporarily replaced by the interim CEO, Sue Alwyn Popp, who was nine and a half years younger than Schultz. Schultz was then permanently replaced by Marc Augsburger, who was 20 years younger than Schultz.

34.     The fact that Schultz was terminated and then replaced by two substantially younger employees gives rise to an inference of age discrimination.

35.     "It is the very essence of age discrimination for an older employee to be fired because the employer believes that productivity and competence decline with old age." *Hazen Paper Company v. Biggins*, 507 U.S. 604, 610 (1993). This is precisely what occurred here.

36.     In February 2020 shortly after being appointed board chair, Cindi Swanson told Schultz that he "was 75 years old and should consider retiring." This was a direct reference to Mr. Schultz's age further enhancing the inference of age discrimination.

8

37. Other board members also made comments during regular board meetings and executive committee and/or finance committee meetings suggesting that Schultz should retire because of his age, for example, stating that he "was looking tired and stressed for his age" and asking him "how much longer do you want to do this?" and "do you still enjoy your job?"

38. Swanson and board member, Chip Knilans, also made comments about Schultz's age and retirement at a closed session board meeting in August/September 2020, just a short while before Schultz's discharge.

39. In August 2020 Stephanie Angst, Safety Officer for EHHS, referred to Schultz as "an old man who does not know what he is doing." Angst was not directly involved in Schultz's termination; however, as a part of management she participated in the 360 Survey, which the Board relied on in terminating Schultz.

40. Article 8 of the Second Amended and Restated Bylaws of EHHS states, "There *shall* be an annual review/evaluation of the CEO by the Board of Trustees." However, admittedly no such review was ever conducted by the board regarding Schultz's job performance as CEO.

41. The performance review process set forth in the Employee Handbook included catalytic coaching to "ensure communication and two-way feedback", which was never done for Schultz, whereas such reviews were completed for similarly situated younger employees.

## VI.  CLAIM FOR AGE DISCRIMINATION

42.     For a claim against the defendant Edgerton Hospital and Health Services, Inc. under 29 U.S.C. § 621 et seq. the plaintiff James Schultz alleges all the paragraphs previously set forth in this complaint as though fully stated herein.

43.     By engaging in the conduct described above, specifically terminating plaintiff's employment because of his age, defendant violated the plaintiff's rights under the ADEA, 29 U.S.C. § 621 et seq.

44.     The defendant's unlawful conduct was a substantial factor in causing the plaintiff to suffer a significant loss of wages and benefits, both past and future and other pecuniary losses.

## VII.  CLAIM FOR LIQUIDATED DAMAGES

45.     For a claim against the defendant Edgerton Hospital and Health Services, Inc. for liquidated damages under 29 U.S.C. § 621, et seq., the plaintiff James Schultz realleges all the paragraphs previously set forth in this complaint as though fully stated herein.

46.     The defendant's conduct in terminating the plaintiff's employment because of his age was intentional and willful within the meaning of the ADEA thereby entitling plaintiff to liquidated damages.

## VIII.  JURY DEMAND

47.     The plaintiff hereby demands that the issues in the above-captioned matter be tried by a jury.

WHEREFORE, the plaintiff demands judgment as follows:

A.   Back wages and benefits;

B.   Liquidated damages in an amount equal to the plaintiff's back wage and benefit losses;

C.   Prejudgment interest on plaintiff's back wage and benefit losses;

D.   Reinstatement or front pay until plaintiff's planned retirement date;

E.   An order enjoining the defendant from further engaging in discriminatory and unlawful practices in violation of the ADEA;

F.   An order finding that the defendant willfully violated the ADEA;

G.   Plaintiff's reasonable attorneys fees and costs incurred in bringing this action as well as the prior administrative action; and

H.   Such other relief as the Court may deem just and proper.

Dated at Monona, Wisconsin this 11th day of July, 2022

Respectfully submitted:

FOX & FOX, S.C.

s/Mary E. Kennelly

_____

Mary E. Kennelly
SBN: 01019036
mkennelly@foxquick.com
Michael R. Fox
SBN: 01015173
mfox@foxquick.com
124 West Broadway
Monona, Wisconsin 53716
Telephone: 608/258-9588
Facsimile: 608/258-9105